## TUGGLE *v.* STATE.

Opinion delivered May 23, 1927.

1. INTOXICATING LIQUORS—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to sustain a conviction for manufacturing and being interested in the manufacture of liquor.

2. INTOXICATING LIQUORS—INSTRUCTION.—In a prosecution for manufacturing and being interested in the manufacture of liquor, an instruction that the State need not show that defendant was present when the liquor was manufactured, if he was interested either directly or indirectly in its manufacture, *held* not error.

3. CRIMINAL LAW—INSTRUCTION.—An instruction requested by defendant, which was in conflict with a correct instruction given, was properly refused.

4. INTOXICATING LIQUORS—INTEREST IN MANUFACTURING LIQUOR.—In a prosecution for manufacturing and being interested in manu-

facturing liquor, the State is not required to show what interest defendant had in manufacturing it, but only that he had some interest.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*D. E. Waddell,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

HUMPHREYS, J. Appellant was indicted, tried and convicted in the circuit court of Hot Spring County for the crime of unlawfully manufacturing and being interested in manufacturing liquor, and, as a punishment therefor, was adjudged to serve a term of one year in the State Penitentiary, from which is this appeal. Two assignments of error are urged in support of a reversal of the judgment. First, that the evidence is insufficient to support the judgment; and, second, that the court erred in giving instructions numbers 1 and 2 requested by appellant.

(1). T. S. Fisher, sheriff of said county, and W. O. Richardson, his deputy, discovered the still in the northern part of the county. On November 20, 1926, they went to it and found two negroes making whiskey, and arrested them. There were ten gallons of whiskey near the still. They told the sheriff that they had been forced to work there during the day by two white men, who had gone, but would return by night. The sheriff kept the negroes near the still, and directed his deputy to go down to the road about 400 yards away and, if the men came, to follow them to the still. About sundown a car stopped on the road near the deputy, and Charlie Pinion and appellant got out. Each took a sack of sugar about half-way to the still, where they stopped and talked a few minutes. Appellant laid the sack down that he was carrying and returned to the car for a third sack, which he carried and placed beside the one he had laid down. Charlie Pinion took the sack he was carrying in the direction of the still. Appellant returned to the car and

deposited the second sack of sugar, drove up the road a short distance, turned, and started back, when he was stopped by the deputy. Appellant got out of the car and asked the deputy what he meant, and the deputy asked him what he was going to do with the sugar. Appellant asked him, "What sugar?" About that time shots rang out at the still, and appellant said, "What in hell is that happening up there now?" The deputy said that he did not know, but that they would go up and see. Appellant took the lead, and went directly to the still. As Charlie Pinion approached the still, he observed the sheriff, dropped the sugar, and ran, although the sheriff was trying to halt him by firing upon him. The two negroes stated to the sheriff and his deputy, and testified, that appellant was not one of the two men who forced them to work at the still. The sugar was purchased from Bauckman, and he told the sheriff, and afterwards the deputy, that appellant bought the sugar from him. He testified, however, that Charlie Pinion bought it from him, and that appellant came and hauled it away.

Appellant testified that he called at Bauckman's for the sugar at the request of Charlie Pinion, who paid him $5 for hauling it out to where the deputy arrested him; that, after getting the sugar, he met Charlie Pinion by agreement at an old house by the road and took the sugar to the place where the arrest was made; that he did not know a still was there, and that he was not interested in the still or the manufacture of the liquor. Appellant had served a term in the penitentiary for selling whiskey prior to his arrest.

A legal inference which can be drawn from the purchase of the sugar and the manner in which it was handled is that it was purchased for use in manufacturing liquor at the still where the negroes were arrested. If the jury believed that appellant purchased it, that fact alone is sufficient to support the verdict finding that he was interested in the manufacture of liquor. The jury had additional circumstances, however, from which such

an inference might have reasonably been drawn. The circumstances, for example, of answering the deputy as he did when asked what he was doing with the sugar; his remark when the shots rang out at the still; his bee-line lead to the still to see what happened up there; his former conviction for selling whiskey; and his flimsy explanation to the effect that he charged and received $5 for hauling three sacks of sugar that distance when on his way home. We think the evidence sufficient to sustain the verdict.

(2). Instruction number 1, given by the court at the request of the State, was not abstract as contended by appellant. The conflict in the testimony as to who purchased the sugar and the legitimate inferences of guilt which might be drawn from the circumstances detailed above constitute sufficient ground for the instruction.

Instruction number 2, given by the court at the request of the State, is assailed because the court told the jury it was not necessary for the State to show that appellant was present at the time the liquor was manufactured, if they believed, beyond a reasonable doubt, from the evidence that he was interested, either directly or indirectly, in the manufacture of whiskey. This instruction was based upon § 6160 of Crawford & Moses' Digest, which provides that it shall be unlawful for any person to manufacture or be interested in the manufacture of any intoxicating liquor.

Instruction number 1, requested by appellant, was in conflict with instruction number 2 given by the court, and therefore an incorrect declaration of law. The court did not err in refusing to give the instruction.

Instruction number 2 requested by appellant and refused by the court is as follows:

"It is the duty of the State in this case to show what interest, if any, the defendant had in the manufacturing of liquor as charged, and, if it has failed to show his interest beyond a reasonable doubt, you will find him not guilty."

This instruction is not a correct declaration of law. The State is not required to show what interest, but only that the accused has an interest, directly or indirectly, in the manufacture of liquor. The rights of appellant were sufficiently protected by instructions numbered 3 and 5, requested by appellant and given by the court. Number 3 told the jury that the burden of proof was upon the State to prove every material allegation in the indictment, and, if it failed to do so in any particular, then they should acquit him. Number 5 told the jury that they should not convict appellant unless his guilt had been established to the exclusion of every other reasonable hypothesis of his innocence.

No error appearing, the judgment is affirmed.